IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01074-PSF-CBS
(Consolidated with 05-cv-01095; 05-cv-01134; 05-cv-02124)

JAMES KENNEY,

      Plaintiff,

v.

ROGER L. KOENIG;
TIMOTHY R. ANDERSON;
NANCY PIERCE;
JOHN W. BARNETT, JR.;
DAVID R. LAUBE;
MARK A. FLOYD;
THOMAS C. LAMMING; and
KELD, LLC,

      Defendants,

and

CARRIER ACCESS CORPORATION, a Delaware corporation,

      Nominal Defendant.

_____

Civil Action No. 05-cv-01095-PSF-CBS
(Consolidated with 05-cv-01074; 05-cv-01134; 05-cv-02124)

SEAN CHAITMAN,

      Plaintiff,

v.

ROGER L. KOENIG;
NANCY PIERCE;
TIMOTHY R. ANDERSON;
JOHN W. BARNETT, JR.;
DAVID R. LAUBE;
MARK FLOYD; and

THOMAS C. LAMMING,

     Defendants,

and

CARRIER ACCES CORPORATION, a Delaware corporation,

     Nominal Defendant.

---

Civil Action No. 05-cv-01134-PSF-CBS
(Consolidated with 05-cv-01095; 05-cv-01074; 05-cv-02124)

WEST COAST MANAGEMENT & CAPITAL, LLC,

     Plaintiff,

v.

ROGER L. KOENIG;
NANCY PIERCE;
TIMOTHY R. ANDERSON;
DAVID R. LAUBE;
MARK FLOYD; and
THOMAS C. LAMMING,

     Defendants,

and

CARRIER ACCESS CORP.,

     Nominal Defendant.

---

Civil Action No. 05-cv-02124-PSF-CBS
(Consolidated with 05-cv-01074; 05-cv-01095; 05-cv-01134)

ROSS NOVAK, Individually, on Behalf of All Others Similarly Situated,
and Derivatively on Behalf of Carrier Access Corporation,

     Plaintiff,

v.

2

JOHN W. BARNETT, JR.;
MARK A. FLOYD;
ROGER L. KOENIG;
THOMAS C. LAMMING;
DAVID R. LAUBE; and
NANCY PIERCE,

        Defendants,

and

CARRIER ACCESS CORPORATION, a Delaware corporation,

        Nominal Defendant.

---

## ORDER ON PENDING MOTIONS

---

        This matter comes before the Court on Nominal Defendant Carrier Access Corporation's ("Carrier's") Motion to Dismiss Plaintiffs' First Amended Shareholder Derivative Complaint ("Def.'s Mot. Dis.") (Dkt. # 56), filed October 12, 2005, Individual Defendants' Motion to Dismiss Plaintiffs' First Amended Shareholder Derivative Complaint ("Ind. Defs.' Mot. Dis.") (Dkt. # 57), also filed October 12, 2005, and Defendant Timothy R. Anderson's Motion to Dismiss Plaintiffs' First Amended Shareholder Derivative Complaint (Dkt. #63).  This Order also addresses Carrier's Objection to Magistrate Judge's Order (Dkt. # 96), filed January 10, 2006.  The motions are fully briefed and ripe for determination.  The Court has determined that oral argument will not be of material assistance.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff James Kenney filed the first of four derivative suits on behalf of Carrier

against Defendants Roger L. Koenig, Timothy R. Anderson, Nancy Pierce, John W.

Barnett, Jr., David R. Laude, Mark A. Floyd, Thomas C. Lamming, and KELD, LLC

("KELD") on June 13, 2005 (Dkt. # 1) alleging breach of fiduciary duty, abuse of control,

gross mismanagement, waste of corporate assets, violations of the Sarbanes-Oxley Act

of 2002 and unjust enrichment.  Plaintiff Sean Chaitman filed a second derivative suit

on June 15, 2005, and Plaintiff West Coast Management & Capital, LLC filed a third on

June 17, 2005.  On August 11, 2005 this Court ordered consolidation of the related

shareholder derivative actions (Dkt # 36).  Plaintiffs then filed their First Amended

Shareholder Derivative Complaint ("Am. Compl.") on September 26, 2005 (Dkt. # 48).

On October 25, 2005, Defendant John W. Barnett, Jr. removed to federal court a

related state court derivative action originally filed in Boulder County, Colorado District

Court.  On November 9, 2005, this Court granted an unopposed motion to consolidate

that case with the others (Dkt. # 73).

Carrier, a Delaware corporation headquartered in Boulder, Colorado, "designs,

manufactures and sells converged access equipment to wireline and wireless carriers."

Def.'s Mot. Dis. at 3.  At the time the complaint was filed and during the relevant period,

Carrier's board consisted of six members.  *Id.*  In addition to Nominal Defendant

Carrier, plaintiffs name as defendants in this action Roger L. Koenig (Carrier CEO and

Chairman of the Board of Directors), Timothy R. Anderson (Carrier CFO and Treasurer

until November 2004), Nancy Pierce (Carrier Corporate Development Officer and

4

director), John W. Barnett, Jr. (outside director), David R. Laube (outside director), Mark A. Floyd (outside director), Thomas C. Lamming (outside director since April 2004), and KELD (a Carrier shareholder).  Am. Compl. at 4-6.  (Koenig and Pierce will be referred to as "manager directors" while Barnett, Laube, Floyd and Lamming will be referred to as "independent outside directors.")

Defendants Koenig and Pierce (husband and wife co-founders of Carrier) are the managing members of KELD.  *Id.* at 4-5.  Defendants Anderson, Koenig, Pierce, and KELD are alleged to have engaged in illegal insider selling of Carrier stock during the relevant period.[1]  *Id.* at 7, 34-38.  None of the independent outside directors is alleged to have engaged in any illegal insider trading, or any Carrier stock trading, during the relevant period.  *Id.* at 47-48.  Additionally, only Defendants Koenig, Anderson and Pierce are subject to the claim asserted under the Sarbanes-Oxley Act. *Id.* at 48.

Each of the independent outside directors named as defendants was a member of Carrier's Audit Committee during the relevant period.  *Id.* at 32-33.  While all of the directors are alleged to have abdicated their oversight responsibilities to the company, the plaintiffs allege that

> particularly the members of [Carrier's] Audit Committee . . . wholly abdicated their responsibilities and breached their duties to the Company and its shareholders by failing to implement adequate accounting procedures and internal controls necessary to provide reasonable assurance that the Company's financial statements were issued in accordance

---

[1]  Anderson, Koenig, and Pierce are also defendants in three class action suits alleging similar misconduct.  *See* Def.'s Mot. Dis. at 4.

> with GAAP [generally accepted accounting principles] and
> that the Company was in compliance with all federal and
> state laws.

Pls.' Resp. at 11; *see also* Am. Compl. at 34, ¶ 60.

Plaintiffs contend that Carrier employed improper financial reporting methods for

fiscal year 2003 and fiscal year 2004.  Am. Compl. at 28-31; *see* Def.'s Mot. Dis. at 5.

The plaintiffs focus on allegedly false and misleading statements made in press

releases issued by Carrier from October 2003 to January 2005.  Am. Compl. at 2-3,

8-33.  Most of the press releases identified by the plaintiff paint a rosy picture of

Carrier's then current financial well being, express an optimistic forecast for Carrier's

future growth, or both.  For example, a September 8, 2004 press release, quoting

Koenig, stated "[w]e continue to believe we are focused on the highest growth markets

and believe we are well positioned to profitably grow our business."  Am. Compl. at 16.

On July 20, 2004, Carrier reduced the company's projected earnings, sending

the per share price of the Company's stock down $4.73 to $8.06, a decline of 37%.  *Id.*

at 15.  On November 18, 2004, Carrier issued a press release announcing defendant

Anderson's resignation from his position as Chief Financial Officer.  *Id.* at 18.  On May

20, 2005, Carrier issued a press release entitled "Carrier Access Provides Financial

Update and Receives Nasdaq Hearing Date."  *Id.* at 20.  The relevant portion of this

release stated:

> Carrier Access is in the process of performing a detailed
> review of all significant customer relationships and as part
> of those reviews is evaluating the propriety of the timing of
> revenue and cost recognition and other revenue recognition
> issues.  At this point in time, the Company has determined

> that certain revenues and direct costs have been recorded
> in incorrect periods.  The amounts that have been quantified
> to date are significant and, as a result, previously issued
> financial statements for the year ended December 31, 2004,
> and certain interior periods in each of the years ended
> December 31, 2004, and 2003, will be restated.

*Id.* at 20-21.  Immediately following this press release Carrier's stock price fell from

$5.30 to $4.60 per share.  *Id.* at 22.

On June 3, 2005, the first of three separate class action suits were brought

against Defendants Carrier, Koenig, Pierce, and Anderson, alleging violations of the

Securities Exchange Act.  Exs. 5-7 to Stefano Decl. (Dkt. # 59); Def.'s Mot. Dis. at 4-5.

None of the independent outside directors is named as a defendant in any of these

actions.

Thus, in essence, plaintiffs contend that the statements made in the press

releases, based on estimations made using improper accounting and financial reporting

methods, overstated the company's financial position and prospects, which caused the

company's stock to artificially soar, and ultimately plummet.  *See* Am. Compl. at 22.

However, defendants argue that plaintiffs' claims–specifically, that the improper

accounting methods and misleading statements ultimately led to an SEC investigation

and class action law suits–are insufficient to establish injury to the corporation in order

to maintain a derivative action.  *See* Ind. Defs.' Mot. Dis. at 2.

## II.  CARRIER'S MOTION TO DISMISS

Nominal Defendant Carrier moves to dismiss the claim pursuant to Rule 23.1 of

the Federal Rules of Civil Procedure and the substantive requirements of controlling

Delaware law.  Carrier argues that "[t]he Complaint should be dismissed because plaintiffs failed to make a pre-litigation demand on the Board and failed to allege facts demonstrating that demand would have been futile."  Def.'s Mot. Dis. at 1.  Carrier further argues that plaintiffs' complaint should be dismissed because it "runs afoul" of other procedural requirements of Rule 23.1.  *Id.* at 19.

## A.  Demand Requirement

Federal Rule of Civil Procedure 23.1 establishes the procedural requirements for bringing a shareholder derivative suit in federal court.  The rule requires a complaint to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and, if necessary, from the shareholders or members, *and the reasons for the plaintiff's failure to obtain the action or for not making the effort*."  F.R.Civ.P. 23.1 (emphasis added).  However, Rule 23.1 does not determine the substance of what, specifically, constitutes a valid excuse for failing to make demand.

To determine the substantive law applicable to a failure to make a demand on directors in a derivative action context, federal courts must "apply the demand futility exception as it is defined by the law of the State of incorporation."  *Kamen v. Kemper Fin Servs., Inc.*, 500 U.S. 90, 108-109 (1991); *see also Wilshire Oil Co. of Tex. v. Riffe*, 409 F.2d 1277, 1283 n.16 (10th Cir. 1969) (applying Delaware law as to the liability of corporate officers and directors where Delaware is the state of incorporation).  Because Carrier is incorporated in Delaware, Delaware law will determine whether the plaintiffs in this shareholder derivative action are excused from the demand requirement.

8

Plaintiffs do not dispute this.  In fact, the parties are essentially in agreement as to which Delaware cases are controlling and which tests should be applied.  *See* Def.'s Mot. Dis. at 6; Pls.' Resp. at 14-16.

In the complaint, plaintiffs concede that they failed to make a demand upon Carrier's Board of Directors to initiate a lawsuit prior to the commencement of this suit. Am. Compl. at 40.  However, plaintiffs argue that the demand requirement should be excused because they have alleged facts sufficient to demonstrate demand futility.  *Id.* at 38-44.  Under Delaware law, the demand requirement is a rule of substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise.  *See e.g. Jerue v. Millett*, 66 P.3d 736, 744 n.20 (Alaska 2003) and *Decker v. Clausen*, 1989 WL 133617 *2 (Del. Ch. 1989), *quoting Aronson v. Lewis,* 473 A.2d 805, 809 (Del. 1984), *overruled on other grounds*, *Brehm v. Eisner*, 746 A. \2d 244, 255 (Del. 2000).  A demand requirement "gives the directors–even interested, non-independent directors–an opportunity to consider or reconsider the issue in dispute . . . [which] may be their first knowledge that a decision or transaction they made or approved is being questioned."  *Webowsky v. Collumb*, 766 A.2d 123, 144 (2001) (apply the "Delaware test").  Generally, to overcome the demand requirement, a plaintiff must allege particularized facts creating a reasonable doubt that "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgement."  *Aronson*, 473 A.2d at 814; *see e.g. In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003).

However, this test is not appropriate where the challenged conduct is board *inaction*, as is the case here.  *See Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993) (reasoning that "[t]he absence of board action . . . makes it impossible to perform the essential inquiry contemplated by *Aronson*–whether the directors have acted in conformity with the business judgment rule in approving the challenged transaction"). Thus, the second prong of the *Aronson* test is eliminated, and the proper inquiry becomes whether plaintiffs have "allege[d] particularized facts creating a reasonable doubt that a majority of the Board would be disinterested *or* independent in making a decision on a demand."  *Rales*, 634 A.2d at 930 (emphasis added).

Plaintiffs assert that they have alleged with sufficient particularity facts creating a reasonable doubt that a majority of Carrier's board of directors are both disinterested and independent, although a showing of only one of these would be sufficient to establish demand futility.  The Court will address these arguments in turn.

### 1.  Interest

A director is considered interested in a decision made by the board "if he will be materially affected, either to his benefit or detriment, . . . in a manner not shared by the corporation and the stockholders."  *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (citing *Rales*, 634 A.2d at 936).  Thus, where a director is charged with deciding whether to bring a derivative suit naming himself or herself as a defendant the director is potentially interested because he could face personal liability.  However, a plaintiff cannot establish a disqualifying interest simply by noting that a director is named as a

defendant. *Brehm*, 746 A.2d at 257 n.34 (citing *Aronson*, 473 A.2d at 817-18 and reasoning that "[i]t is no answer to say that demand is necessarily futile because the directors 'would have to sue themselves, thereby placing the conduct of the litigation in hostile hands'"); *see also Seminaris*, 662 A.2d at 1354 (the "mere threat" of personal liability in the derivative action does not suffice to establish a disqualifying interest, citing *Rales*, 634 A.2d at 936).  Rather, only "a '*substantial likelihood*' of personal liability prevents a director from impartially considering a demand." *Id.* (emphasis added).

Here, plaintiffs fail to plead with particularity facts creating a reasonable doubt that a majority of the board members face a substantial likelihood of liability.  While plaintiffs argue that the two manager directors breached their duties of good faith and loyalty to Carrier through illegal insider selling of stock, the four independent outside directors are only alleged to have "breached their duties of good faith to the company by their failure to implement effective internal financial and accounting controls." Pls.' Resp. at 17.

This type of claim, predicated upon the defendants' failure to act or failure to oversee, is governed by the standard set forth in *In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996).  The *Caremark* court described a director's duty to oversee as follows:

> [A] director's obligation includes a duty to attempt in good
> faith to assure that a corporate information and reporting
> system, which the board concludes is adequate, exists,
> and that failure to do so under some circumstances may, in

>theory at least, render a director liable for losses caused by
>non-compliance with applicable legal standards.

*Id.* at 970 (footnote omitted).  However, the *Caremark* court recognized that this theory

is "possibly the most difficult theory in corporation law upon which a plaintiff might hope

to win a judgment."  *Id.* at 967.

To be meritorious on such a claim, a plaintiff must establish "a sustained or

systematic failure of the board to exercise oversight–such as an utter failure to attempt

to assure a reasonable information and reporting system exists."  *Id.* at 971.  The

showing required to find liability in this type of case is "quite high."  *Id.*; *see also*

*Seminaris*, 662 A.2d at 1355 ("In order to hold the directors liable [in a *Caremark*

situation, a] plaintiff will have to demonstrate that they were grossly negligent in failing

to supervise the[] subordinates.").

In the present context, the plaintiffs can only overcome the demand requirement

"if [they] present[] well-pleaded facts to suggest a reasonable inference that a majority

of the directors consciously disregarded their duties over an extended period of time."

*David B. Shaev Profit Sharing Account v. Armstrong*, 2006 WL 391931 *1 (Del. Ch.,

Feb. 13, 2006).  Moreover, plaintiffs' claim must fail if "[a]ll of the allegations of serious

misconduct on the part of the directors are stated conclusorily [sic], without

specification of particular personal acts or conduct to sustain the asserted

conclusions."  *Citron ex rel. United Techs. Corp. v. Daniell*, 796 F. Supp. 649, 652-53

(D. Conn. 1992) (applying Delaware law).

12

Plaintiffs argue that the "[d]efendant [d]irectors largely failed to implement effective internal financial and accounting controls and that this failure directly led to the Company's accounting improprieties spanning a two year period," and that defendant directors did not assure that Carrier maintained a sufficient number of qualified accounting personnel. Pls.' Resp. at 18-20. Plaintiffs emphatically and persistently state that they have alleged such a claim with sufficient specificity and particularity. *See* Pls.' Resp. at 25. However, plaintiffs' notion of what constitutes particularized factual allegations is insufficient, and their complaint does not deliver what it promises.

Plaintiffs, along with their generalized averments of culpability, basically quote lengthy blocks from Carrier press releases, a speech from an SEC staff member, Sections of the 1934 Securities and Exchange Act, a *Bloomberg* article, and the Charter of the Audit Committee. Am. Compl. at 8-33; Pls.' Resp. at 5-14, 19. Noticeably lacking from both the plaintiffs' Amended Complaint and Response are any *specific failures* of the independent outside director defendants or the Audit Committee of which they were members. *See Rattner v. Bidzos*, 2003 WL 22284323 *12 (Del. Ch., Sept. 30, 2003) (finding that the plaintiffs had not established a substantial likelihood of liability in a similar accounting oversight claim, noting that, "conspicuously absent from any of the Amended Complaint's allegations are particularized facts regarding the Company's internal financial controls during the Relevant Period, notably the actions and practices of [the corporation's] audit committee").

13

All that plaintiffs' Amended Complaint and Response ostensibly demonstrates is that Carrier had an audit committee and the four independent outside director defendants were members of this committee during the period where the accounting improprieties occurred.  That is not enough.  *See id.* at *13 (reasoning that in a case involving an accounting oversight claim, a director's mere membership of an audit committee during the relevant period does not suffice to create a substantial likelihood of liability).  Plaintiffs produce no evidence of the role, "if any, the Board or its members played in the internal processes of collecting and disseminating financial information." *Id.* They aver no facts showing "how often and how long [the Audit Committee] met, who advised the committee, and whether the committee discussed and approved any of the allegedly improper accounting practices." *Guttman v. Huang*, 823 A.2d 492, 498 (Del. Ch. 2003).  Which specific oversight duties did the independent outside directors neglect?  What specific action did these directors fail to take?  Which "specific red–or even yellow–flags were waved at the outside directors"?  *Id.* at 507.  While plaintiffs claim to have alleged specific facts addressing these questions, the Court can find none.

Plaintiffs note that Carrier recognized in multiple press releases that its internal financial controls during the relevant period were ineffective.  Am. Compl. at 19-31. For example, in Carrier's Form 10-K/A, filed with the SEC on August 2, 2005, Carrier disclosed that "our disclosure controls and procedures were not effective as of the end of the period covered by this Annual Report on Form 10-K/A because of the material weaknesses in internal control over financial reporting discussed below." *Id.* at 28.

14

However, the fact that Carrier eventually recognized its controls were ineffective does not necessarily show "a sustained or systematic failure of the board to exercise oversight." *Caremark*, 698 A.2d at 971.  Rather, if anything, such recognition and subsequent board action would create quite the opposite inference.  Furthermore, if mere recognition by the board that controls were previously ineffective or inadequate were sufficient to establish a substantial likelihood of liability, "demand would be excused in practically every case" involving a restatement of financials.  *See Shields ex rel. Sundstrand Corp. v. Erickson*, 710 F. Supp. 686, 691 (N.D. Ill. 1989) (finding that plaintiffs inadequately alleged futility of demand under both federal and Delaware law in derivative suit alleging, *inter alia*, RICO violations) (citations omitted).  Because plaintiffs have failed to plead any particularized facts establishing that the independent outside directors consciously disregarded their accounting oversight duties over an extended period of time, they cannot establish that these defendants face a substantial likelihood of liability on a *Caremark* theory, and thus fail to demonstrate that the directors were interested.

The Court further notes that none of the independent outside directors are named as defendants in any of the three securities class action complaints, which mirror the present complaint.  *See* Def.'s Mot. Dis. at 4, 9; Stefano Decl. Exs. 5-7.  This further undermines plaintiffs' assertion that defendants face a substantial likelihood of liability in the present action.

The cases upon which plaintiffs rely are either distinguishable or simply do not support their argument.  For instance, plaintiffs cite *In re FirstEnergy Shareholder*

15

*Deriv. Litig.*, 320 F. Supp. 2d 621 (N.D. Ohio 2004).  Plaintiffs recognize that this case applies Ohio law.  However, plaintiffs fail to point out that Ohio law allows demand to be excused whenever the board members are named as defendants.  *Id.* at 624. Moreover, the *FirstEnergy* court emphasized that the plaintiff had pled particularized facts, including the directors' cavalier attitude regarding nuclear plant safety.  *Id.* at 624-25.

Plaintiffs also cite *In re Storage Tech. Corp. Sec. Litig.*, 804 F. Supp. 1368 (D. Colo. 1992) as an example of a case involving a *Caremark* claim decided under Delaware law where demand was excused.  However, in that case the court found that the "allegations portray a board of directors which *actively participated in misleading the public* and participated in the alleged insider trading."  *Id.* at 1376 (emphasis added).  In contrast, no facts alleged here demonstrate any active participation by the independent outside directors in insider trading, the accounting failures or in knowingly making the misleading statements.  Furthermore, Chief Judge Babcock noted in *Storage Tech* that "[c]onclusory allegations that directors participated in, approved of, or acquiesced to the conduct in question, unsupported by any specific facts, are insufficient to demonstrate bias or lack of independence."  *Id.* at 1375.

Plaintiffs' reliance on *In re Oxford Health Plans, Inc. Sec. Litig.*, 192 F.R.D. 111 (S.D.N.Y. 2000) is similarly misplaced.  The *Oxford Health* plaintiffs alleged specifically that "the Director Defendants were aware of the problems and despite their *knowledge* of these facts *intentionally* caused Oxford to continue [to lead the company in a destructive course of action] without reasonably insuring themselves that fundamental

16

measures were undertaken," among other things.  *Id.* at 115 (emphasis added) (internal quotations and annotation omitted).  Plaintiffs here have not specifically alleged that the directors knew of the financial control problems during the relevant period and intentionally disregarded them.

Finally, *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795 (7th Cir. 2003), to which plaintiffs also cite,  is easily distinguishable from the present facts.  Unlike the plaintiffs here, the *Abbot* plaintiffs alleged specific facts concerning the number of times the directors met and specific warnings the directors received and ignored.  *Id.* at 802, 806.

As Carrier notes, plaintiffs have apparently abandoned their argument that the directors suffer from a disqualifying interest because by bringing the suit themselves they would risk an exclusion of insurance coverage.  Def.'s Reply at 3 n.3.  In any event, the Court agrees with defendant that this argument fails as a matter of law.  *See Decker v. Clausen*, 1989 WL 133617 *2 (Del. Ch., Nov. 6, 1989) (observing that this argument fails because it is but a "a variation[] on the 'directors suing themselves' and 'participating in the wrongs' refrain"); *cf. Brehm*, 746 A.2d at 257 n.34 (Del. 2000) (citing *Aronson*, 473 A.2d at 817-18) (discussing the "participating in the wrongs" argument and reasoning that "it is no answer to say that demand is futile because the directors 'would have to sue themselves, thereby placing the conduct of the litigation in hostile hands'").

Defendants have raised the argument that the four independent outside directors actually face *zero* likelihood of liability because Carrier's corporate charter promulgated under 8 Del. C. § 102(b)(7) forecloses damages against directors for non-intentional breaches of duty of care.  Def.'s Reply at 4 n.4.  However, in light of the above analysis and because plaintiffs failed to plead particularized facts showing that the four independent outside directors face a substantial likelihood of liability in the derivative action, whether these directors are in fact shielded from *any* liability by the exculpatory provision becomes immaterial.

For the reasons set forth above, plaintiffs have failed to present facts creating a reasonable doubt that four of the six directors face a substantial likelihood of liability, and have not met their burden to show that a majority of the Carrier Board would be disinterested under *Rales*, 634 A.2d at 930.  The Court thus must turn to whether a majority of the directors lacked independence, providing another basis for excusing the demand requirement.  *See id.*

### 2.  Independence

A director will be considered independent if "he can base his decision 'on the corporate merits of the subject before the board rather than extraneous considerations or influences.'"  *Brehm*, 746 A. 2d at 256 n.31 (citing *Aronson*, 473 A.2d at 816).  Plaintiffs can establish a lack of independence by showing that the directors are "beholden" to other directors or "so under their influence that their discretion would be sterilized."  *Rales*, 634 A.2d at 936 (citing *Aronson*, 473 A.2d at 815).

"Independence is a fact-specific determination made in the context of a particular case." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004). "A party alleging domination and control of a company's board of directors bears the burden of proving such control by showing a lack of independence on a part of a majority of the directors." *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002).

A director may be controlled by another person if that person has "the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider" the merits of the demand objectively. *Id.* Furthermore, "[a] stockholder's control of a corporation does not excuse presuit demand on the board without particularized allegations of relationships between the directors and the controlling stockholder demonstrating that the directors are beholden to the stockholder." *Beam*, 845 A.2d at 1054.

Even assuming that Koenig and Pierce do in fact qualify as "interested" directors,[2] the plaintiffs fail to plead particularized facts tending to show that the remaining directors are beholden to them and therefore lack independence. Plaintiffs contend that demand should be excused because "Koenig and Pierce are the

---

[2] Because the plaintiffs have not plead particularized facts creating a reasonable doubt that the other four of the six Carrier directors are disinterested, the Court finds it unnecessary to make a determination on this issue, but will assume it for purposes of evaluating independence.

beneficial owners of 39.7% of the Company's common stock . . . [and] completely control and dominate the Board of Directors of [Carrier]."  Am. Compl. at 41, ¶ 74(h). The plaintiffs point to Carrier's Form 10-K/A, filed with the SEC on August 2, 2005, which states in relevant part, "A small number of shareholders can exert significant influence on the outcome of matters requiring the approval of a majority of the outstanding shares of common stock."  *Id.*  Plaintiffs further allege that "[i]n order to bring this suit, a majority of the Directors of Carrier Access would be forced to sue . . . persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand."  *Id.* at 42, ¶ 74(j).

Again, plaintiffs fail to plead any particularized facts demonstrating that any of the four outside directors are "dominated by," "controlled" or "beholden to" Koenig and Pierce.  *See Telxon*, 802 A.2d at 264.  First, the mere allegation that Koenig and Pierce collectively are the beneficial owners of nearly 40% of Carrier's stock does not suffice to create a reasonable doubt that the remaining directors lack independence.  *Aronson*, 473 A.2d at 815 ("[S]tock ownership alone, at least when it amounts to less than a majority, is not sufficient to prove domination or control.") (quoting *Kaplan v. Centex Corp.*, 284 A.2d 119, 123 (Del. Ch. 1971)).  Plaintiffs cite *Zimmerman v. Braddock*, 2005 WL 2266566 (Del. Ch., Sept. 8, 2005), arguing that in certain factual situations, significant stock ownership coupled with other factors will demonstrate domination:

> [T]here are circumstances in which a shareholder with less than a majority of a company's equity can effectively control and dominate a board.  Something more than merely owning a sizable (but less than majority) block of the Company's

> stock is necessary.  The inquiry may involve, for example,
> the exercise of power by a dominant chief executive.

*Id.* at *9 (footnote omitted).  However, the plaintiffs fail to provide that "something

more," *i.e.*, describing how, specifically, Koenig and Pierce dominated the board or

exerted inordinate influence on the remaining four independent outside directors.

Importantly, plaintiffs allege no specific compensation or other benefit to the

independent outside directors upon "which the director[s] [are] so dependent . . . that

its threatened loss might create a reason to question whether the director is able to

consider" the merits of a demand objectively.  *Telxon Corp.*, 802 A.2d at 264.

Moreover, the disclosure in the 10-K/A that Koenig and Pierce, Carrier's founders and

plurality stockholders, exert significant influence over board elections and stockholder

votes simply states the obvious.  It does nothing to cast suspicion on the independence

of the other directors.  None of the cases cited by plaintiffs support their proposition

that such an "admission" alone "is sufficient to demonstrate Keonig and Pierce's control

over the Board of Directors."  Pls.' Resp. at 31; *see Ebay, Inc. Shareholders Litig.*, 2004

WL 253521 *2 (Del. Ch., Jan. 23, 2004) (demand futility recognized where in addition

to Ebay's admission in an SEC Report that the interested directors and their affiliates

owned nearly 50% of the company stock, the outside directors would materially benefit

from stock options that would vest only if they remained on the board).

On its face, the 10K/A disclosure describes the practical realities of corporate

governance when insiders own large but not controlling percentages of company stock.

It reveals little if anything about what makes this situation so unusual that outside

director independence must be cast into doubt.  At most, the disclosure serves as an

admission that Defendants Koenig and Pierce *could* exercise a great deal of influence

in the election of the other board members, as that is a matter "requiring the approval of

a majority of the outstanding shares of our common stock."  Am. Compl. at  ¶ 74(h).

However, in its essence, this statement is not much different than an admission that

Koenig and Pierce collectively are beneficial owners of a sizable portion of Carrier

stock, and, without more, is insufficient to create a reasonable doubt that the

independent outside directors acted independently from Koenig and Pierce.

     The cases cited by plaintiffs actually undermine their argument that the

independent outside directors were influenced by extraneous considerations and

therefore lacked independence.  In *Beam*, the court found that a provision in the

corporation's prospectus for public offering was not enough to create a reasonable

doubt as to the independence of outside directors.  The provision indicated

> We are highly dependent upon our founder, Chairman
> and Chief Executive Officer, Martha Stewart . . . .  The
> diminution or loss of the services of Martha Stewart, and
> any negative market or industry perception arising from that
> diminution or loss, would have a material adverse effect
> on our business . . . .  Martha Stewart remains the personi-
> fication of our brands as well as our senior executive and
> primary creative force.

*Beam*, 845 A.2d at 1053 n.35.  Furthermore, Stewart–the Chairman of the Board and

CEO of the corporation–controlled 94% of the shareholder vote.  *Id.* at 1045 n.3.

The Court finds the prospectus provision in *Beam* to be somewhat analogous to the

provision contained in Carrier's 10-K, and likely even more indicative of control and

domination by a chairman and significant shareholder.  Plaintiffs' reliance on the admission in Carrier's 10-K and the significant stock ownership of the allegedly interested directors *a fortiori* fares no better here than in *Beam*.

Finally, the plaintiffs produce no evidence suggesting any substantial business or personal relationship between any of the directors, other than Koenig and Pierce, who are husband and wife.  "Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."  *Beam*, 845 A.2d at 1050.

Plaintiffs argue that where an even number of directors comprise the board, a "plaintiff can demonstrate the futility of making a demand by showing that half of the board members are either interested or not independent."  Pls.' Resp. at 16 n.3.  Because plaintiffs do not establish that even three of the six Carrier directors suffer from a debilitating interest or lack of independence, the Court agrees with Nominal Defendant Carrier that this argument is moot.  *See* Def.'s Reply (Dkt. # 85) at 2 n.2.

### B.  Defendants' Other Procedural Claims

Defendants claim that Plaintiff West Coast Management & Capital LLC and Plaintiff Sean Chaitman do not meet other procedural requirements of Federal Rule of Civil Procedure 23.1, alleging, *inter alia*, that they were not shareholders of record during the relevant period.  However, because plaintiffs failed to make a pre-litigation demand and failed to allege facts demonstrating that demand would be futile, it is unnecessary to consider the merits of these claims.  In any event, even if the Court

were to dismiss the action with regards to these plaintiffs, Plaintiffs James Kenny and Ross Novak would remain.

### C. Plaintiffs' Request for Leave to Amend

Plaintiffs ask that the Court "dismiss this action without prejudice and with leave to amend so that Plaintiffs can attempt to cure any perceived pleading deficiencies" in the event the Court finds that plaintiffs have not sufficiently demonstrated demand futility. Pls.' Resp. at 35. The Court finds no basis for allowing plaintiffs to amend their complaint.

If plaintiffs were not already aware of the level of specificity by which they must plead their case in order to establish demand futility, Defendant's Motion to Dismiss certainly put them on notice. In responding, plaintiffs failed to provide any new factual allegations which might have cured their pleading deficiencies. Moreover, to the extent that plaintiffs attempt to amend their complaint with factual allegations discovered *after* their initial filing—through discovery or otherwise—Delaware law precludes such reliance. Under Delaware law, demand futility must be "gauged by the circumstances existing at the commencement of a derivative suit." *Aronson*, 473 A.2d at 810 (reasoning that the plaintiff could not rely upon the content of the defendant's motion to dismiss itself to establish board hostility and thus demand futility). While repleading or discovery on this issue would itself be an exercise in futility, the dismissal based on the granting of motions to dismiss must be *without* prejudice. Plaintiffs may wish to follow

24

up with a demand, or the Carrier board itself may wish to have the corporation pursue any legal remedies it may have unilaterally.

## III.  INDIVIDUAL DEFENDANTS' AND ANDERSON'S MOTIONS TO DISMISS

In light of this Court's finding that plaintiffs failed to adequately plead demand futility, it is unnecessary to evaluate the merits of the additional motions to dismiss.

## IV.  OBJECTION TO MAGISTRATE JUDGE'S ORDER

On November 15, 2005, Carrier and individual defendants filed a Motion for Protective Order Staying Discovery Pending Resolution of Carrier Access Corporation's Motion to Dismiss for Failure to Make a Litigation Demand (Dkt. # 75).  On November 18, 2005, Defendant Anderson filed his Motion for a Protective Order (Dkt. # 83).  Both were referred to the Magistrate Judge.  Plaintiffs West Coast Management & Capital LLC and Sean Chaitman filed a response to both motions (Dkt. # 84).  The Magistrate Judge issued an order on December 28, 2005 (Dkt. # 93), granting in part and denying in part defendants' motion, and granting Anderson's motion.  The order allowed limited discovery as to Carrier, but did not allow discovery with regards to the individual defendants.  On January 10, 2006, Defendant Carrier filed an Objection pursuant to F.R.Civ.P. 72 to the order (Dkt. # 96), and filed a motion for stay of discovery pending a ruling on their objection (Dkt. # 98).  On January 25, 2006, the Magistrate Judge granted Carrier's motion for stay.  Based on the Court's finding that plaintiffs failed to adequately plead demand futility, resulting in a dismissal of the action, Carrier's Objection is moot.

25

## V.  CONCLUSION

For the reasons stated herein, this Court GRANTS Nominal Defendant Carrier Access Corporation's motion to dismiss (Dkt. # 56) and thus finds it unnecessary to reach the merits of any other defenses raised by defendants.  Individual Defendants' motion to dismiss and Anderson's motion to dismiss (Dkt. ## 57 and 63) are also GRANTED for failure of plaintiffs to adequately plead demand futility.  Carrier's Objection (Dkt. # 96) is DENIED as moot.  These cases are DISMISSED without prejudice.

DATED: March 30, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge